IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TIMOTHY M. WOODS,

    Plaintiff,

v.                                                                   Civil Action No. 11-323-RGA

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION

Gary L. Smith, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Dina White Griffin, Special Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

September 25, 2012


ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff, Timothy M. Woods, appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-433. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Woods and the Commissioner. (D.I. 18, 24). For the reasons set forth below, the Court grants Woods' motion for summary judgment and denies the Commissioner's motion.

I. **Procedural History**

Woods filed his application for DIB on December 15, 2005 (D.I. 11 ("Transcript" and hereafter "Tr.") at 45, 107), alleging disability since December 7, 2005 due to diabetes, visual impairment and hypertension. (Tr. 111). Woods' claim was denied initially on October 2, 2006 and again was denied upon reconsideration on March 9, 2007. (Tr. 44-47). Woods submitted a written request for a hearing on April 16, 2007, but his non-attorney representative withdrew the request on December 10, 2007. (Tr. 316). Thereafter, the case was dismissed. (Tr. 316). Woods obtained an attorney, Gary L. Smith, who filed an appeal to the Appeals Council. (Tr. 319).

On January 23, 2008, Woods filed a subsequent application for benefits and the state agency determined that he was disabled as of December 18, 2007. (Tr. 317). The Appeals Council affirmed the state agency's decision and also vacated the prior dismissal on the grounds that there was no evidence that Woods had authorized his representative to withdraw his hearing request. (Tr. 319). The Appeals Council remanded the case for a determination of whether

2

Woods was disabled before December 18, 2007. (Tr. 319-20). On August 26, 2009, the ALJ issued a decision finding that Woods was not disabled under the Act prior to December 18, 2007. (Tr. 22-32). The Appeals Council denied Woods' request to review the ALJ's decision on March 10, 2011, making the ALJ's determination the final decision of the Commissioner. Woods filed this lawsuit on April 12, 2011. (D.I. 1).

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

Woods, who was 40 years old at the time of the ALJ's decision, is a "younger individual" under the regulations. (Tr. 32, 170). *See* 20 C.F.R. § 404.1563(c). He has a high school education. (Tr. 116). Woods has past relevant work as a janitor supervisor, caterer server, and assembler. (Tr. 112).

Woods' detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence. Prior to the relevant period, Woods had a history of insulin-dependent Type 1 diabetes mellitus and diabetic retinopathy in his eyes. (Tr. 219, 292-93). During the relevant period, Woods received treatment for diabetes and had several hospital visits for episodes of hypoglycemia. (Tr. 219-20, 458, 465, 486, 514, 535, 600, 704, 809). In December 2005, endocrinologist, Ronald P. Monsaert, M.D., reported that Woods had decreased sensation in his feet, but no cyanosis, clubbing, or edema in his extremities. (Tr. 220). Dr. Monsaert reported that Woods' hypoglycemic events were rare, usually about 3 times per month. (Tr. 219). He recommended that Woods return to learn carbohydrate counting and other issues related to diabetes education and use his abdomen exclusively for his insulin injections. (Tr. 219-20). Woods' other clinical examinations were similarly unremarkable, showing that he

3

exhibited a normal range of motion in his extremities and had no pedal edema. (Tr. 217, 265, 460, 475, 494, 549, 809).

Due to diabetic retinopathy, Woods was blind in his left eye, but his right eye vision improved during the relevant period. (Tr. 219, 289). In November 2005, Woods underwent a right eye vitrectomy and repair of retinal detachment surgery. (Tr. 196-197). Following the surgery, in December 2005, treating physician Dr. Ko reported that Woods' visual acuity had improved to 20/80 in his right eye. (Tr. 289). She noted that Woods had slight vision problems with small things, but he was able to see distances better. (Tr. 289). Dr. Ko also indicated that Woods' vision loss was mostly due to retinal ischemia, which she believed would improve with better control of his hypertension and blood sugars. (Tr. 284). In October 2006, Dr. Ko again reported that Woods' retinopathy was inactive and stable. (Tr. 276-77). She noted that Plaintiff's visual acuity in his right eye was 20/100 with a moderate cataract and the left eye was hand motion. (Tr. 275, 277). In an eye report form, Dr. Ko indicated that Woods was severely visually impaired, but not legally blind or totally blind. (Tr. 275). After October 2006, Woods received no treatment from Dr. Ko or any other eye care professional until December 2007. (Tr. 28).

In October 2006, Robert Palandjian, D.O., reviewed the record for the state agency and completed a Physical Residual Functional Capacity assessment. (Tr. 237-43). Dr. Palandjian opined that Woods could perform light work with visual and hazard restrictions. (Tr. 242). In March 2007, Vinod Kataria, M.D., reviewed the evidence at the state agency's request and concurred with Dr. Palandjian's assessment. (Tr. 309).

At the administrative hearing, Woods testified that he had no problems with self-care

4

other than needing help getting in and out of the shower due to his left ankle but mentioned no problems with bathing, dressing or shaving due to vision loss. (Tr. 1167-68). Woods testified that he chose to turn in his driver's license and was not ordered to do so by a doctor. (Tr. 155). He further testified that he cared for his younger children and attended church on a weekly basis. (Tr. 1169-70). Woods stated that he can sometimes be combative when his blood sugars change and that this happens about two to three times per month. (Tr. 1172-73). Woods, however, conceded that this happens when he is noncompliant with his diet and that his compliance is improving with time. (Tr. 1172).

### B. ALJ's Decision

In his August 26, 2009 decision, the ALJ found that Woods had the severe impairments of diabetes mellitus, vision disorder, and obesity. (Tr. 24). The ALJ further found that Woods had the residual functional capacity ("RFC") to perform light work with occasional postural activities, but no climbing of ladders, ropes, or scaffolds, had to avoid concentrated exposure to temperature extremes, odors, dust, gases, poor ventilation, and have no exposure to hazards including moving machinery and heights, and needed work which did not require a lot of reading, long distance vision, or driving. (Tr. 26). Based on this RFC, the ALJ concluded that Woods was unable to perform any past relevant work but could perform the requirements of representative occupations such as cafeteria attendant, sales clerk, and information clerk. (Tr. 31-32). Accordingly, the ALJ concluded that Woods was not disabled under the Act. (Tr. 32).

## III. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185,

5

1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.22d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

### IV.    Disability Determination Process

6

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is

7

suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment or its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by her or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before

denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert ("VE"). *See id.*

## V. Analysis

### A. Substantial Evidence Supports the ALJ's RFC Assessment

Woods argues that the ALJ's determination of his RFC and limitations is not supported by substantial evidence. Woods addresses fifteen specific reasons provided by the ALJ and argues they are "either irrelevant, misstatements of the record, or fail to address all of the relevant evidence necessary to determine Woods' RFC and limitations." (D.I. 19 at 15).[1] Effectively, Woods is requesting that I re-weigh the evidence. I am not permitted to do so. *See Monsour*,

---

[1] Three of the fifteen reasons are argued to be misstatements of the record. The ALJ once stated that Dr. Ko stated that Woods' vision was 20/80 in both eyes, when in fact the 20/80 vision was in his right eye. The record as a whole makes clear that the ALJ understood that Woods had virtually no vision in his left eye. (Tr. 25). The error was harmless.

The ALJ stated Woods testified he took the bus to the hearing. The testimony was a bit confused, with both DAST and DART being mentioned. (Tr. 1155). On the whole, though, it seems clear that he took DAST. The record is not clear exactly what sort of vehicle this would involve, although it is unlikely it would be characterized as a "bus." Again, any error here was harmless.

The ALJ also stated that "he is the caregiver for [his four minor children]." (Tr. 28). His testimony was that he answered, "Yes," to the ALJ's question, "do you provide any childcare for your younger children?" (Tr. 1169). The ALJ's characterization was thus significantly more than the record supported. Nevertheless, the amount of childcare that Woods provided is simply one fact among many that the ALJ offered for her conclusion that Woods "has admitted to performing a fair amount of daily activities." (Tr. 28). Under the circumstances, any error was harmless.

9

806 F.2d at 1191 ("[S]o long as an agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings.").

In any event, the ALJ's RFC assessment is supported by substantial evidence. First, Woods' physical examinations were generally unremarkable, revealing that he had full range of motion in his extremities and no cyanosis, clubbing or edema. (Tr. 217, 220, 265, 460, 475, 494, 549, 809). Second, Woods' impairments improved during the relevant period. Although Woods was blind in his left eye, the vision in his right eye improved following his November 2005 surgery. (Tr. 289). In December 2005, Dr. Ko reported that Plaintiff's right vision had improved to 20/80 and that he could see distances better. (Tr. 289). Dr. Ko also indicated that Woods' vision would improve if he gained better control of his hypertension and blood sugars. (Tr. 278, 284). In addition, in October 2006, Dr. Ko again reported that Woods' retinopathy was inactive and stable. (Tr. 276-77). Finally, two state agency physicians, Drs. Palandjian and Kataria, opined that Woods could perform a modified range of light work with visual and hazard restrictions for his diabetes and retinopathy. (Tr. 237-43, 309). Based on the above record, the ALJ had substantial evidence from which she could reasonably conclude that Woods could perform a modified range of light work.

Accordingly, the ALJ's RFC assessment is supported by substantial evidence.

**B.     The ALJ's Hypothetical Question to the Vocational Expert Was Insufficient**

Woods makes two arguments as to why the ALJ's hypothetical question was insufficient. First, Woods asserts that the hypothetical question was inadequate because it did not contain any restrictions due to Woods' hypoglycemia attacks. (D.I. 19 at 18-19). Second, Woods argues that the hypothetical question was inadequate because "the ALJ's use of the term 'limited' is non-

specific and does not give the vocational expert any guidance." (D.I. 19 at 19).

The ALJ's hypothetical question to the vocational expert was insufficient with respect to Woods' hypoglycemic events. It did not include them. (Tr. 1175). The ALJ was required to include a limitation for frequent hypoglycemic episodes because Dr. Monsaert reported that Woods' hypoglycemic events were usually about 3 times per month. (Tr. 219). Woods' medical records during the relevant two-year period are consistent with this conclusion. (Tr. 458, 217, 262, 809, 700, 766, 585, 572, 558, 535, 514, 531, 486, 465). Furthermore, the VE specifically noted that, in partial response to the question, "Is there anything within the record, or [any] testimony you've heard today that would change your opinion whether Mr. Woods could be employed?" that, "it also being at a control level where he does experience [the] lows." Tr. 1179. This unclear answer was then clarified. The VE was asked whether hypoglycemic attacks two or three times per month would "affect the jobs that you've identified?" The VE's answer was, "I agree that it would affect the jobs" because "he would be missing a significant amount of time [from work]." (Tr. 1182). The VE's answer certainly suggested that the effect would be that there would be no jobs. That is an issue that needed to be addressed and resolved because it involved a significant limitation supported by the record. It was not. Therefore, the ALJ's conclusion that Woods was not disabled was not supported by substantial evidence.

Whether the hypothetical question was inadequate because it required "limited" vision is a closer call. Woods argues, with some force, that the vocational expert testified that she had no way of evaluating Woods' visual acuity with specific jobs and stated that she looked at jobs which allowed "occasional near and far vision," even though the ALJ's hypothetical question did not contain that limitation. The government's brief is silent on this issue and, therefore,

11

unhelpful in this respect. I conclude that the hypothetical question was probably adequate as to Woods' vision. The ALJ's use of the word "limited" was not vague under the circumstances. The ALJ specified that the hypothetical person had "limited near-far acuity, depth perception, and field of vision" and stated that he would need to have a job that did not require a lot of reading or long-distance vision. (Tr. 1175).

## VI. Conclusion

For the reasons discussed above, Woods' Motion for Summary Judgment is granted and the Commissioner's Motion for Summary Judgment is denied.

An appropriate order will be entered.